UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

MELBI OVIDIO ORTEZ,

Defendant

Criminal No.: 26-10015-DCJ

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the United States Attorney for the District of Massachusetts, Leah B. Foley, and undersigned Assistant United States Attorney, hereby submits this Memorandum for the Court's consideration in advance of sentencing of Defendant, Melbi Ovidio Ortez.  Based upon the United States Sentencing Commission Guidelines Manual sentencing range applicable to Defendant, the statutory sentencing factors set forth in 18 U.S.C. § 3553, and the parties' negotiated Plea Agreement (D.E. 30), the Government recommends that Defendant be sentenced to 30 months imprisonment, to be followed by 36 months supervised release.  This sentence is sufficient to hold Defendant accountable for his destructive criminal activity and not greater than necessary to accomplish all the goals of sentencing.

### BACKGROUND

As described in the revised Presentence Investigation Report ("PSR"), compiled by U.S. Probation and Pretrial Services ("Probation") on April 30, 2026, Defendant was a gun and drug trafficker who peddled this destructive contraband in criminal commerce with gang associates.

A witness cooperating ("CW") with the Federal Bureau of Investigation ("FBI") negotiated and conducted illegal transactions in April and May 2025 with Defendant at a breakneck pace – five in less than 30 days.  In that span of time, Defendant sold approximately 84

grams of cocaine, four handguns, 4 magazines, and 170 rounds of ammunition.  In total, the five sales netted Defendant $9,400.  Defendant's criminal activity was, therefore, both substantial and lucrative.

The joint federal investigation by the FBI and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") laid bare Defendant's shadowy enterprise and the network of lawbreakers with whom Defendant conducted his illicit and dangerous business.  The CW was referred to Defendant as a source of illegal firearms by an 18th Street Gang member.  PSR at ¶ 9.  The gang member – unlawfully present in the United States and a serial violator of this country's immigration laws – had himself sold an illegal firearm to the CW in February 2025 but was arrested and detained a month later in March 2025.  *Id*.  The connection with Defendant was facilitated by Defendant's cousin, who was the gang member's romantic partner.  *Id*.  She sold the CW another illegal firearm belonging to the gang member, in order to raise his bail money.  *Id*.

Defendant directed the CW to meet him behind his Chelsea residence for each deal, in a storage space underneath a back porch.  *See*, *e.g.*, PSR at ¶ 11.  The clandestine meetings were brief, and no one else was present besides Defendant and the CW.  Defendant was careful to handle the illegal weapons with gloves, and to count the CW's cash payments.  *See, e.g.*, PSR at ¶¶ 18, 21, 24.  Despite the perfunctory character, Defendant still found opportunity to hawk more guns and drugs, soliciting new deals with the CW.  *See, e.g.*, PSR at ¶¶ 15, 24.

The serial numbers of two of the guns Defendant sold had been obliterated.  *See* PSR at ¶ 26.  However, after inspecting the gun Defendant sold on April 3, 2025, an ATF investigator discovered the serial number inside on its frame.  *Id*.  Using the serial number, investigators traced

the gun to a licensed New Hampshire dealer who had sold it legally only 20 days earlier.[1]  *Id.*  The short duration between legitimate and illicit sales, and the obliterated serial numbers, are hallmarks of sophisticated gun trafficking.  Here, the facts further demonstrated Defendant's access to sources of firearms who were knowingly engaging in criminal activity, specifically one or more straw purchasers.[2]

### THE ADVISORY SENTENCING GUIDELINES

The Guidelines are advisory only.  *United States v. Booker,* 543 U.S. 220 (2005). Nevertheless, the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [] a court should ordinarily begin by calculating the applicable guideline range."  *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007); *see Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark.").

In this case, the Government recommends a sentence at the low end of the advisory Guidelines range: 30 months imprisonment, to be followed by the statutory mandatory minimum 36 months supervised release.  This sentence is reasonable because it falls within the applicable Guidelines range, *cf. Rita v. United States*, 551 U.S. 338, 350 (2007) ("it is fair to assume that the Guidelines . . . reflect a rough approximation of sentences that might achieve §3553(a)'s objectives), and it best satisfies the statutory goals of sentencing, considering all the facts and circumstances of this case together.  *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 49 (holding that

---

[1] The Government has brought to Probation's attention that the PSR states the incorrect date of sale and has requested a revision.

[2] A "straw purchaser" buys a gun from a licensed dealer on behalf of another person, which conduct is prohibited under federal law and may constitute violations of 18 U.S.C. § 924(a)(1)(A) (false statement to federal firearms licensee), 18 U.S.C. § 932 (straw purchasing of firearms), and 18 U.S.C. § 933 (firearms trafficking).

courts should consider all the Section 3553(a) sentencing factors and undertake "an individual assessment based on the facts presented"). Specifically, the Government's recommended sentence is substantial enough to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment and adequate deterrence; however, it is also a balanced recommendation that accounts for Defendant's individualized circumstances and background.

*GUIDELINES CALCULATION*

The Government agrees with Probation's analysis of Defendant's Guidelines offense level. *See* PSR at ¶¶ 33-49.  The counts of conviction are grouped pursuant to USSG §3D1.2(c), and the applicable offense level is the highest offense level of the counts in the group.  *See* PSR at ¶¶ 35-36; USSG §3D1.3(a).

The base offense level for Count One, Engaging in the Business of Dealing in Firearms Without a License, is 12.  USSG §2K2.1(a)(7).  There are several applicable specific offense characteristics.  Because Defendant sold four guns, the offense level is increased by two levels. USSG §2K2.1(b)(1)(A).  At least one of the guns Defendant sold had an obliterated serial number, increasing the offense level by a further four levels.  USSG §2K2.1(b)(4)(B)(i).  Finally, a further four levels are added for a total of 22, because Defendant sold the guns in connection with another felony offense, *i.e.*, cocaine distribution.  USSG §2K2.1(b)(7)(B).

The base offense level for Count Two, Distribution of and Possession with Intent to Distribute a Controlled Substance, is 14 based on the combined weight of cocaine Defendant sold. The offense level is increased by two levels because Defendant possessed guns in connection with his cocaine distribution.  USSG §2D1.1(b)(1).  The adjusted Count Two offense level is 16, which is less than the adjusted Count One offense level.  Therefore, the Count One offense level – 22 – is the applicable offense level.  A three-level offense level reduction is warranted by Defendant's

4

acceptance of responsibility, and the Government intends to move for the third point at sentencing, pursuant to USSG §3E1.1(b).  *See* USSG §3E1.1.  Accordingly, Defendant's total offense level is 19.  PSR at ¶ 49.

The Government concurs with Probation's computation of Defendant's criminal history score and the assignment of Defendant to Criminal History Category I.  PSR at ¶¶ 51-54.  The resulting Guidelines sentencing range of imprisonment, based upon a total offense level of 19 and a Criminal History Category of I, is 30 months to 37 months.  PSR at ¶ 84.  The Court must impose a term of supervised release of at least three years.  *See* 21 U.S.C. § 841(b)(1)(C); PSR at ¶ 86.

## RECOMMENDATION

### *NATURE AND CIRCUMSTANCES OF THE OFFENSE*

Defendant's crimes involve the trafficking of illegal guns and an addictive drug, and his conduct should trouble the Court deeply.  Moreover, Defendant pursued this extraordinarily destructive criminal activity for his own personal gain.  These crimes – and the corrupt motivation underlying them – are undoubtedly deserving of substantial punishment and deterrence.

Defendant was not selling personal-use quantities of cocaine to CW, but instead trafficking weights that were enough to redistribute to dozens of consumers.  Drug trafficking at the scale undertaken by Defendant has many victims, although there are few spokespersons for the misery it causes.  Besides the users themselves, spouses, significant others, children, relatives, friends, employers, and even communities as a whole all feel the trauma of addiction, dependence, violence, sickness, and even death, that comes from drug distribution.  Courts in the First Circuit have acknowledged the dangers that drug distribution poses to the community, and their relevance when fashioning a reasonable sentence under 18 U.S.C. § 3553(a). *See United States v. Espinal-*

*Almeida*, 699 F.3d 588, 620 (1st Cir. 2012); *United States v. Pulido*, 566 F.3d 52, 64 (1st Cir. 2009).

Defendant also sold four guns to CW in less than a month.  As courts have observed, the future harm of firearms trafficking is "immeasurable."  *See, e.g., United States v. Hernandez*, 663 F.3d 370, 373 (5th Cir. 2011).  Under the circumstances – selling drugs and guns together to referrals from his gang associates – Defendant understood that the gun sales would not serve a law-abiding purpose, making his conduct especially blameworthy.  *See United States v. Taylor*, 845 F.3d 458, 461 (1st Cir. 2017); *United States v. Ilarraza*, 963 F.3d 1, 12-13 (1st Cir. 2020). Where there continues to be an "epidemic of handgun violence in communities within [the District of Massachusetts]," *United States v. Politano*, 522, F. 3d 69, 72 (1st Cir. 2008), Defendant's inclination to sell firearms to drug traffickers should be considered with the utmost seriousness at sentencing.

The proliferation of firearms in communities makes criminal offenders more dangerous. States in the United States with more guns have more deaths.[3]  And greater access to firearms is correlated with higher incidence of death from assaults and other conflicts.[4]  There were approximately 20,958 deaths as a result of a homicide involving a firearm in 2021.[5]  That is approximately 80.5% of all homicides for the year.[6]  According to ATF's recent multi-volume

---

[3] German Lopez, VOX, America's unique gun violence problem, explained in 16 maps and charts (August 16, 2021), previously accessible at: https://www.vox.com/policy-and politics/2017/10/2/16399418/america-mass-shooting-gunviolence-statistics-charts (as of February 2026, this article requires account registration).

[4] David M. Hureau & Anthony A. Braga, The Trade in Tools: The Market for Illicit Guns in High-Risk Networks, CRIMINOLOGY, volume 56 issue 3, July 18, 2018, accessible at https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187 (last accessed May 5, 2026).

[5] America's gun culture in charts, BBC NEWS, December 7, 2023, accessible at https://www.bbc.com/news/world-us-canada-41488081 (last accessed May 5, 2026).

[6] *Id*.

National Firearms Commerce and Trafficking Assessment report, data show that trafficked guns are used to arm individuals who cannot legally purchase guns and are used in twice as many shootings as guns that are not trafficked.[7]

Significantly in this case, Defendant trafficked firearms while associating with members of the 18th Street Gang.  Most gang-related murders and felonies involve illegal guns, according to federal crime data.[8]  Illegal guns circulating among high-risk networks undoubtedly present a grave threat to the security and well-being of those residing in this District.  The sentence imposed should reflect the view that severe punishment is warranted for offenders who supply illegal guns to those associated with gangs and drug trafficking, circumstances which tend to drive up rates of deadly violence in American cities, historically.[9]

The sentence imposed by the Court must reflect the seriousness of Defendant's offenses, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2)(A).  Here, the Court should also be cognizant of the need for the sentence imposed to provide specific and general deterrence, to discourage Defendant himself and others who may be tempted, like Defendant, to engage in the devastating but profitable trades in drugs and guns. *See* 18 U.S.C. § 3553(a)(2)(B).

---

[7] *See* ATF, "National Firearms Commerce and Trafficking Assessment (NFTCA), Volume III: Firearms Trafficking Investigations—Part IX: Investigation Outcomes," April 2024, 5, accessible at https://www.atf.gov/media/14521/download (last accessed May 5, 2026).

*See also* ATF, "National Firearms Commerce and Trafficking Assessment (NFTCA), Volume IV: Protecting America from Trafficked Firearms—Part IV: Firearm Trafficking Investigations," January 2025, 19, accessible at https://www.atf.gov/sites/default/files2/nfcta_volume_iv_-_part_iv_0.pdf (last accessed May 5, 2026).

[8] Gun Violence in America, NATIONAL INSTITUTE OF JUSTICE, February 26, 2019, accessible at https://nij.ojp.gov/topics/articles/gun-violence-america (last accessed May 5, 2026).

[9] *Supra* at FN 5, citing Cooper, Alexia, and Erica Smith, *Homicide Trends in the United States, 1980-2008*, Bureau of Justice Statistics, Nov. 16, 2011, abstract accessible at https://bjs.ojp.gov/library/publications/homicide-trends-united-states-1980-2008 ((last accessed May 5, 2026).

Accordingly, a Guidelines sentence of imprisonment, consistent with the Government's recommendation, is reasonable and warranted in this case.

*HISTORY AND CHARACTERISTICS OF DEFENDANT*

Defendant is a 41-year-old immigrant from El Salvador. PSR at ¶ 62. From his childhood, Defendant personally experienced the danger, fear, and misery wrought by gangs. His neighborhood was surrounded by gangs who were violent and harassed people in the community. PSR at ¶ 65. Defendant himself reported being a victim of gang violence and fleeing to the United States to escape it. PSR at ¶¶ 65-66.

For many years, Defendant maintained his Temporary Protected Status, despite a string of arrests and contacts with the criminal justice system in his late teens and early 20's. *See* PSR at ¶¶ 57-60. None of the cases resulted in convictions, and it does not appear that Defendant has been arrested since 2008. However, the mere absence of arrests and convictions must be considered in the context of the offense conduct, and his infrequent interactions with the criminal justice system support the Government's recommended sentence. Given the strong evidence from the investigation of Defendant's involvement in criminal trafficking networks and access to illegal contraband, it is much more likely that the paucity of his criminal record is a better indicator of his success avoiding detection by law enforcement, rather than actually living a law-abiding life. Moreover, it is worth noting that Defendant's offense conduct is sufficiently egregious to bar him from benefiting from the "Zero-Point Offender" adjustment to his Guidelines offense level. *See* USSG §4C1.1(a)(7) (firearm).

Defendant experienced the hardships associated with growing up in an environment plagued by gangs in his early childhood. Presumably, he also had to grapple with all the various difficulties facing any immigrant. But Defendant is largely removed from those challenges;

8

notably, he committed his crimes after being in Massachusetts for many years. He maintained regular employment as a chef, earning $1,600 per week. PSR at ¶ 79. So, Defendant's crimes were not driven by financial desperation. Nor do they appear to have been fueled by a substance abuse addiction. *See* PSR at ¶ 77. Rather, Defendant's motive for engaging in the dangerous trafficking activity was simple: profit. And to increase his profits, he did business with gangs – the very groups he knew full well destroyed communities.

This mercenary-like behavior reflects Defendant's character, prospects for rehabilitation, and likelihood of recidivism, and it warrants the substantial sentence recommended by the Government. *See* 18 U.S.C. § 3553(a)(2)(C) ("need to protect the public from further crimes of the defendant"). Similarly, the evidence suggests that Defendant's offense conduct has a nexus to his associations with the 18th Street Gang. Defendant's gang associations being a meaningful element of his criminal conduct, they ought to be weighed by the Court under 18 U.S.C. § 3553(a), as they also bear upon Defendant's risk of recidivism and the need for the sentence imposed to protect the public from further crimes of Defendant. 18 U.S.C. § 3553(a)(2)(C); *see United States v. Banks*, 772 Fed. Appx. 505, 514 (6th Cir. 2018) (greater need for deterrence and protection of public in sentence imposed on recently active gang member); *see also United States v. Rivera*, 281 F. Supp. 3d 269, 288-289 (E.D.N.Y. Dec. 7, 2017).

As referenced in the PSR, U.S. Citizenship and Immigration Services revoked Defendant's Temporary Protected Status, and there is an outstanding warrant for his removal from the country. PSR at ¶ 67. Therefore, Defendant is likely to be deported upon completion of the term of imprisonment imposed by the Court in this case. Defendant's former romantic partner and two children continue to reside in Massachusetts, and other family members also live in the United States. PSR at ¶¶ 68-70. Because of these relationships, Defendant may have incentive to return

9

to the United States if deported.  The Government requests that, as a condition of his supervised release, the Court order Defendant to abide by United States immigrations law and not unlawfully re-enter the country.

## CONCLUSION

For all the foregoing reasons, the Government respectfully recommends that the Court sentence Defendant to a term of imprisonment of 30 months, to be followed by 36 months supervised release.  Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Defendant's offense, to promote respect for the law, to provide just punishment, and to deter Defendant and others from trafficking guns, drugs, and other destructive contraband in the future.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   /s/ *Fred M. Wyshak, III*
FRED M. WYSHAK, III
Assistant U.S. Attorney

Date: May 6, 2026

CERTIFICATE OF SERVICE

I, Fred M. Wyshak, III, Assistant United States Attorney, do hereby certify that this document, filed through the Electronic Case Filing system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those indicated as nonregistered participants on May 6, 2026.

*Fred M. Wyshak, III*
FRED M. WYSHAK, III
Assistant U.S. Attorney